**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

ANGELE J. W.,

                          Plaintiff,

       v.                                                                No. 6:23-CV-00824

COMMISSIONER OF SOCIAL SECURITY,                  (BKS/CFH)

                          Defendant.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**APPEARANCES:**                              **OF COUNSEL:**

Olinsky Law Group                              HOWARD D. OLINSKY, ESQ.
250 South Clinton Street – Suite 210
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration                 GEOFFREY M. PETERS, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Angele J. W.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for a period of disability and disability insurance

benefits.  See Dkt. No. 1.  Plaintiff moves for the Commissioner's decision to be vacated

---

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in accordance with General Order 18 and Local Rule 72.3(d).  See Dkt. No. 4.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

and remanded for further proceedings.  See Dkt. No. 13.  The Commissioner moves for the Commissioner's decision to be affirmed.  See Dkt. No. 16.  Plaintiff filed a reply. See Dkt. No. 17.  For the following reasons, it is recommended that plaintiff's motion be granted, and the Commissioner's decision be reversed and remanded for further proceedings.

## I. Background

On January 25, 2021, plaintiff filed a Title II application for a period of disability and disability benefits.  See T. at 14, 262-65.[3]  Plaintiff alleged a disability onset date of November 9, 2019.  See id. at 264.  The Social Security Administration ("SSA") denied plaintiff's claims initially on May 1, 2021, and upon reconsideration on July 6, 2021.  See id. at 153-60, 162-69.  Plaintiff appealed and requested a hearing, see id. at 173-74, and a virtual hearing was held before Administrative Law Judge ("ALJ") Jennifer Gale Smith on March 17, 2022.  See id. at 33-66.  On April 27, 2022, the ALJ issued an unfavorable decision.  See id. at 11-24.  Plaintiff timely commenced this action on July 10, 2023.  See Dkt. No. 1.

## II. Legal Standards

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 8.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.

1990).  Rather, the Commissioner's determination will only be reversed if the correct

legal standards were not applied, or it was not supported by substantial evidence.  See

Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d

464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning

that in the record one can find "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d

Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal

citations omitted)).  The substantial evidence standard is "a very deferential standard of

review . . . [This] means once an ALJ finds facts, we can reject [them] only if a

reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin.,

Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal

quotations marks omitted).  Where there is reasonable doubt as to whether the

Commissioner applied the proper legal standards, the decision should not be affirmed

even though the ultimate conclusion is arguably supported by substantial evidence.

See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817

F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding

is supported by substantial evidence, such finding must be sustained "even where

substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v.

Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a

claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  See id. (citing Berry, 675 F.2d at 467).

**III. The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff "last me[t] the insured status requirements of the Social Security Act on March 31, 2020[,]" and "did not engage in substantial gainful activity during the period from her alleged onset date of November 9, 2019, through her date last insured of March 31, 2020."  T. at 16.  At step two, the ALJ found that plaintiff "ha[d] the following severe impairments: degenerative disc disease with radiculopathy, cervical disc disease with radiculopathy, cardiac palpitations, a depressive disorder, and anxiety disorder and substandard intellectual functioning (20 CFR 404.1520(c))."  Id. at 16-17.  At step three,

the ALJ determined that plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 17-19.  Before reaching step

four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except
> she should not have worked at unprotected heights or in
> close proximity to dangerous machinery or moving
> mechanical parts of equipment. [Plaintiff] should not climb
> ladders/ropes/scaffolds.  [Plaintiff] can occasionally balance
> (as defined in the SCO), kneel, crouch, crawl, stoop and
> climb ramps/stairs.  She could frequently push and pull.
> [Plaintiff] was limited to work at simple, routine and repetitive
> tasks.  [Plaintiff] required a low-stress job, defined as
> occasional decision-making, occasional judgment required
> and only occasional changes in the work setting.  She was
> limited to goal-oriented work rather than production-pace-
> rate work.  She could have occasional contact with
> supervisors, coworkers and the public.

Id. at 19.  At step four, the ALJ determined that, "[t]hrough the date last insured,

[plaintiff] was capable of performing past relevant work as a cleaner (DOT # 323.687-

014)[; t]his work did not require the performance of work-related activities precluded by

[plaintiff's] residual functional capacity (20 CFR 404.1565)."  Id. at 22.  At step five, the

ALJ concluded that "[b]ased on the testimony of the vocational expert" and "considering

[plaintiff's] age, education, work experience, and residual functional capacity, [plaintiff]

was capable of making a successful adjustment to other work that existed in significant

numbers in the national economy."  Id. at 24.  Thus, the ALJ determined that plaintiff

"was not under a disability, as defined in the Social Security Act, at any time from

November 9, 2019, the alleged onset date, through March 31, 2020, the date last

insured (20 CFR 404.1520(f))."  Id.

## IV. Discussion

### A. The Parties' Arguments[4]

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. See Dkt. No. 13 at 9.  Specifically, plaintiff contends that "the ALJ erred by constructing an RFC for th[e] time period [between November 15, 2019, through March 31, 2020,] based on her own medical judgments about the evidence."[5]  Id.  Plaintiff notes that, "[i]n the decision, the ALJ . . . stated that her RFC is based on the opinions of Ivan Wolf, M.D., and Sara Long, Ph.D."; "[y]et, these examining providers had no access to [p]laintiff's medical records during the relevant time period [and] their opinions were formed more than a year and half before the relevant time period."  Id. at 10.  Plaintiff asserts that "[t]his timing is crucial" because her physical and mental functioning has worsened since Dr. Wolf and Dr. Long formed their opinions.  Id.  She argues that there are gaps in the administrative record and urges that "further development is needed to obtain retrospective opinions from [her] physicians who treated her during [the relevant] period."  Id. at 11.  Plaintiff further contends that "[t]he ALJ improperly rejected [her] subjective testimony."  Id. at 12-13.

The Commissioner argues that "[s]ubstantial evidence supports the ALJ's finding in this case that, from the alleged onset date of November 9, 2019 through the date last insured, March 31, 2020, [p]laintiff had the RFC to perform a range of light and simple work."  Dkt. No. 16 at 7.  The Commissioner contends that "the ALJ properly considered

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

[5] As plaintiff notes, "[p]laintiff [previously] had an unfavorable ALJ decision issued on November 14, 2019."  Dkt. No. 13 at 9 (citing T. at 94).  "'When a plaintiff has filed a previous unsuccessful application for benefits, the period at issue begins from the day after the date of the earlier decision by the Commissioner denying the plaintiff's application. . .'"  Id. (quoting Cassandra S. v. Kijakazi, No. 3:22-CV-328 (MPS/RMS), 2023 WL 2867068, at *9 (D. Conn. Jan. 30, 2023), and Martin v. Colvin, No. 14-CV-0843, 2015 WL 5794278, at *8 n.1 (E.D.N.Y. Sept. 30, 2015)).

the opinion evidence of record." Id. at 9. Specifically, the Commissioner asserts that, although the ALJ considered Dr. Wolf's and Dr. Long's opinions that were rendered in March 2018, (1) "it is perfectly appropriate for an ALJ to rely on such opinion evidence"; (2) "[p]laintiff's impairments and abilities did not meaningfully change after March 2018"; and (3) "even assuming arguendo that [p]laintiff's impairments had meaningfully changed since Dr. Wolf and Dr. Long's examinations (which is not the case), the ALJ did not need either medical opinion to craft the RFC." Id. at 3, 11, 13, 16. The Commissioner further argues that, "contrary to [p]laintiff's claims[,] the ALJ reasonably concluded that [p]laintiff's subjective complaints of disability were 'not entirely consistent' with the evidence of record as a whole[.]" Id. at 18.

### B. Medical Opinion Evidence

On March 29, 2018, plaintiff underwent a consultative physical examination with Ivan Wolf, M.D. See T. at 1663-67. Following the examination, Dr. Wolf issued a report summarizing plaintiff's chief complaint, past history, current medications, social history, activities of daily living, as well as Dr. Wolf's findings from the physical examination. See id. Dr. Wolf diagnosed plaintiff with history of pituitary tumor, untreated sleep apnea, cervical herniated disc, left carpal tunnel syndrome, learning disability, and anxiety. See id. at 1666. Dr. Wolf opined that plaintiff "is just mildly limited in repetitive forward bending, squatting, heavy lifting, pushing, and pulling," but did "not find any other physical limitations at the present time." Id.

On March 29, 2018, plaintiff also underwent a psychiatric consultative evaluation with Sara Long, Ph.D. See T. at 1670-74. Following the evaluation, Dr. Long issued a report including a summary of plaintiff's background information; current functioning;

psychiatric, medical, drug and alcohol, legal, family, and military histories; mental status; appearance; speech; thought processes; affect; mood; sensorium; orientation; attention and concentration; memory skills; cognitive functioning; insight; judgment; consistency; and mode of living.  See id. at 1670-72.  Dr. Long diagnosed plaintiff with intellectual disabilities.  See id. at 1673.  Dr. Long opined that plaintiff would have

> mild limitations regarding simple tasks.  Regarding complex tasks and making appropriate decisions, there appear to be marked limitations.  She is capable of interacting adequately with others.  She was able to maintain attention and concentration and appears able to maintain a regular schedule.  She appears able to regulate emotion, control behavior, maintain personal hygiene, and is aware of appropriate precautions.

Id. at 1672.  Dr. Long concluded that "multiple accommodations would be required," as plaintiff has "cognitive problems, which may interfere with her ability to function on a regular basis."  Id. at 1673.

The ALJ summarized Dr. Wolf's opinion in her decision, noting that the opinion "was based on an examination of [plaintiff] that found full range of motion of the lumbar spine, full range of motion of the cervical spine, negative straight leg raise testing bilaterally, full strength in the upper and lower extremities and no sensory deficits."  T. at 20.  The ALJ found that Dr. Wolf's opinion was "supported by a subsequent lumbar MRI which was essentially unremarkable," and was consistent with (1) "other records that describe a normal gait and no spondylolisthesis"; (2) "PA Hobaica's opinion that [plaintiff's] subjective complaints are not secondary to any abnormality in [plaintiff's] lumbar spine on January 7, 2022"; (3) "no neck pain and no neck stiffness"; and (4) "[plaintiff's] conservative course of treatment."  Id. (citing T. at 425, 430, 1708).  The ALJ noted that Dr. Wolf's opinion "was rendered prior to the period in question" and,

therefore, was "not more persuasive."  Id.  However, the ALJ concluded that Dr. Wolf's opinion was still "somewhat persuasive as it was based on an examination of [plaintiff], and [plaintiff] has presented little or no evidence of worsening."  Id.

The ALJ also summarized Dr. Long's opinion, noting that Dr. Long's opinion was "based on an examination of [plaintiff] that found an 'extremely low level' of intellectual functioning."  T. at 20 ("In fact, psychologist Long found a full-scale IQ of 54, although she noted a lack of effort and indicated [plaintiff's] IQ would likely be higher based on her general functioning and other testing.").  The ALJ found that Dr. Long's opinion was "consistent with [plaintiff's] ability to work numerous years at the substantial gainful activity level without any evidence of worsening since that time."  Id.  The ALJ stated that, "[i]n fact, a psychological consultant noted no medically determinable mental impairment due to absence of evidence from the period in question."  Id.  Similar to the ALJ's assessment of Dr. Wolf's opinion, she concluded that Dr. Long's opinion was "somewhat persuasive"; however, it was "still not more persuasive, as it was rendered prior to the period in question."  Id.

ALJ Smith explained that her "residual functional capacity [determination] is based on the opinions of Ivan Wolf, M.D., and Sara Long, Ph.D., [as] these opinions are both somewhat persuasive."  T. at 20.  The ALJ did not specify if her RFC determination was based on any other medical opinion evidence.  See id. at 20-22.  In fact, the only other medical opinions that ALJ Smith assessed were found to be "less persuasive" and "not persuasive."  Id. at 22.  Further, ALJ Smith noted that other "medical consultants and psychological consultants found insufficient evidence or no medically determinable impairments."  Id.

Plaintiff challenges the ALJ's reliance on Dr. Wolf's and Dr. Long's opinion, arguing that "[t]heir opinions . . . are dated March 29, 2018[,]" and, thus, their opinions are stale, as they "were formed more than a year and half before the relevant time period." Dkt. No. 13 at 10. Plaintiff contends that "the state agency reviewing consultants at the initial and reconsideration stages[, in fact,] found insufficient evidence to make an RFC assessment," and, "[t]herefore, further development is needed to obtain retrospective opinions from [p]laintiff's physicians who treated her during [the relevant time period]." Id. at 9, 11.

"[M]edical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability." Carway v. Colvin, No. 13-CV-2431 (SAS), 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014) (citing Briscoe v. Astrue, 892 F. Supp. 2d 567, 582 (S.D.N.Y. 2012)). Indeed, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), aff'd, 652 F. App'x 25 (2d Cir. 2016) (summary order). "Medical opinions are rendered 'stale' by a 'new significant diagnosis' or 'significant deterioration' in the plaintiff's condition." Benitez v. Comm'r of Soc. Sec., No. 23-CV-1327 (ARL), 2024 WL 1332612, at *8 (E.D.N.Y. Mar. 28, 2024) (quoting Andrea G. v. Comm'r of Soc. Sec., No. 5:20-CV-01253 (TWD), 2022 WL 204400, at *7 (N.D.N.Y. Jan. 24, 2022)); see Carney v. Berryhill, No. 16-CV-269 (FPG), 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("[A] medical opinion may be stale if it does not account for the [plaintiff's] deteriorating condition.").

"That is not to say the medical records from before the onset date must be disregarded, 'medical records from before the amended onset date are still records which the ALJ can, and should, consider.'"  Benitez, 2024 WL 1332612, at *8 (quoting Melissa S. v. Comm'r of Soc. Sec., No. 3:20-CV-1536 (TWD), 2022 WL 22257293, at *6 (N.D.N.Y. Dec. 7, 2022)); see Binder v. Comm'r of Soc. Sec., No. 5:15-CV-738 (NAM), 2016 WL 4079533, at *4 (N.D.N.Y. July 29, 2016) ("[T]his Court does not conclude that every opinion provided before an alleged onset date is irrelevant"); see also Mills v. Astrue, No. 5:11-CV-955 (GLS), 2012 WL 6681685, at *2 (N.D.N.Y. Dec. 21, 2012) ("Notably, medical records which predate the claimant's alleged onset date can 'prove to be relevant to a claimant's later condition provided that there is indication that the symptoms experienced extended in duration into the relevant time period.'") (quoting Baggett v. Astrue, No. 5:11-CV-0195 (NAM/DEP), 2012 WL 2814369, at *8-9 (N.D.N.Y. June 13, 2012), report and recommendation adopted, 2012 WL 2814329 (N.D.N.Y. July 10, 2012)).  "[E]vidence from before or after the relevant time period often provides necessary context for a disability claim and, if so, an ALJ cannot simply ignore it."  Cheri Lee H. v. Comm'r of Soc. Sec., No. 5:19-CV-10, 2020 WL 109007, at *5 (N.D.N.Y. Jan. 9, 2020) ("For instance, if plaintiff's evidence suggesting that she suffered frequent migraines (at least before the relevant time period) stood uncontested in the record, it might well be inappropriate for the ALJ to ignore it or to reject it out of hand.").

However, remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [plaintiff's] functioning on which the ALJ relied" and the ALJ failed to fully analyze the more recent evidence.  Blash v. Comm'r of Soc. Sec. Admin., 813 F. App'x 642, 644 (2d Cir. 2020) (summary order).  The Second

Circuit has remanded where the ALJ relied upon older evidence regarding the plaintiff's functioning in making his RFC determination, but "fail[ed] to consider whether the older evidence was stale [given that there was] newer evidence show[ing] that [the plaintiff's functioning] had significantly changed within the relevant period." Id.; see Wright v. Kijakazi, No. 22-CV-3310 (PKC), 2023 WL 6308043, at *7 (E.D.N.Y. Sept. 28, 2023) (remanding where, "[i]n reaching this conclusion, the ALJ relied almost exclusively on stale medical evidence from 2017 and 2018, . . . [h]owever, [the p]laintiff's medical condition clearly deteriorated in 2019 and beyond).  Similarly, the Eastern District of New York has held that "it [i]s impermissible for [an] ALJ to credit or rely on [an older medical] opinion as current or relevant," where there is "contradicting evidence in the record" demonstrating that the "[p]laintiff's condition [has] worsened in the period between when [the older medical opinion was formed] and the ALJ's decision."  Almonte v. Comm'r of Soc. Sec., No. 21-CV-3091 (PKC), 2022 WL 4451042, at *9-10 (E.D.N.Y. Sept. 23, 2022); see Frank R. v. Comm'r of Soc. Sec., No. 21-CV-6145 (MWP), 2023 WL 5162664, at *6 (W.D.N.Y. Aug. 11, 2023) ("Review of the medical record, however, demonstrates that plaintiff's lumbar impairment deteriorated following the opinions of these physicians[.] These significant developments call into question the reliability and probative value of the medical opinions upon which the ALJ relied.  On this record, I find that the medical opinions of record are stale and that remand is required for the ALJ to obtain a more current medical assessment of plaintiff's functional capacity related to his lumbar impairment.").

Conversely, this Court has declined to remand, and has held that a medical opinion was not rendered stale even though the plaintiff had "subsequent treatment and

surgeries," where the "[p]laintiff neither demonstrated additional associated functional limitations that undermine[d the medical] opinion, nor identified any relevant evidence post-dating [the medical] opinion that the ALJ failed to consider."  Laura Anne H. v. Saul, No. 6:20-CV-397 (TWD), 2021 WL 4440345, at *6 (N.D.N.Y. Sept. 28, 2021); see Luis M. v. Comm'r of Soc. Sec., No. 1:19-CV-1151, 2021 WL 168475, at *3 (W.D.N.Y. Jan. 19, 2021) (declining to remand where "[the p]laintiff cites evidence in the record which he argues supports a finding of worsening symptoms; however, the ALJ discussed the evidence cited by [the p]laintiff and concluded otherwise."); see also Johnson v. Comm'r of Soc. Sec., No. 1:19-CV-0706 (CJS), 2020 WL 5104550, at *8 (W.D.N.Y. Aug. 31, 2020) ("Here, although the consultative report at issue was written prior to [the p]laintiff's surgery and [motor vehicle accident], it was not stale because, contrary to what [the p]laintiff maintains, there is substantial evidence (normal clinical findings) to support the ALJ's determination that [the p]laintiff's condition did not worsen following the consultative exam.  Moreover, the problems that [the p]laintiff complained about at the consultative examination were the same problems that she complained about following the [motor vehicle accident], namely, neck and back pain.").

Here, Dr. Wolf's opinion was formed over four years prior to the ALJ's decision, and approximately twenty months prior to plaintiff's alleged onset date.  See T. at 14, 20, 1663.  "While age of an opinion alone is not determinative of its staleness," here, "there was evidence in the record that [p]laintiff's [physical] condition [may have] worsened in the period between when [Dr. Wolf] issued [his] opinion[ ] and the ALJ's decision."  Almonte, 2022 WL 4451042, at *9 (citing Biro v. Comm'r of Soc. Sec., 335 F.

Supp. 3d 464, 470 (W.D.N.Y. 2018)).  As plaintiff points out, since Dr. Wolf formed his

opinion, plaintiff

> had an interceding event of a fall down the stairs on
> February 7, 2020, during which an x-ray of the lumbar spine
> indicated that a "[n]ondisplaced fracture of the left greater
> trochanter is suspected." A questionable lucent line through
> the left greater trochanter tip was also noted.  She had a
> positive straight leg raise during examination on February
> 18, 2020.  Plaintiff also had multiple cardiology visits for
> chest pain/tightness and palpitations.  On September 11,
> 2019, a Holter Monitor Report indicated frequent atrial
> ectopy with a burden of 10%, moderate ventricular ectopy,
> and symptomatic PAC's.  Significant bradycardia was noted
> at times with no prolonged pauses.  Additionally, [p]laintiff
> had evidence of advanced hallux valgus deformities resulting
> in pain when walking.

Dkt. No. 13 at 10 (citing T. at 427-28, 447, 454, 456-57, 516, 793).  "None of these

medically determinable impairments were mentioned as part of Dr. Wolf's examination

and report." Id.  Nor did the ALJ address this evidence in determining that plaintiff

"presented little or no evidence of worsening" of her condition since March 2018.  T. at

20.  Contrary to the Commissioner's contentions, plaintiff has presented evidence of her

"deteriorating" physical conditions that the ALJ failed to address.  Carney, 2017 WL

2021529, at *6; see Dkt. No. 16 at 9-10.  Therefore, given that the ALJ failed to address

the recent evidence contradicting Dr. Wolf's opinion, Dr. Wolf's opinion appears to be

stale.

The ALJ also found that there was no "evidence of worsening" as to plaintiff's

mental functioning since Dr. Long formed her opinion in March 2018.  T. at 20.

However, as plaintiff argues,

> during the relevant period, [she] had repeated complaints of
> significant ongoing anxiety.  In Dr. Long's psychiatric
> evaluation and intelligence evaluation, however, there is no

> reference to any reports of anxiety or diagnoses of a
> generalized anxiety disorder.    Rather, Dr. Long's report
> appears to be solely focused on the condition of intellectual
> disabilities.

Dkt. No. 13 at 10-11 (citations omitted).  Although the Commissioner argues that the

record presents little or no evidence of worsening in plaintiff's mental health

impairments since Dr. Long formed her opinion, the undersigned disagrees.  See Dkt.

No. 16 at 12.  Specifically, plaintiff introduced evidence that

> on January 24, 2019, [her] anxiety disorder was diagnosed
> as "deteriorated"; on September 5, 2019 [p]laintiff admitted
> excessive anxiety; on February 4, 2020, [p]laintiff reported
> constant anxiety attacks; and on March 30, 2020, a day
> before the date last insured, her psychological condition was
> assessed as "worsening" and she was taking more of her
> Valium medication.

Dkt. No. 17 at 1 (citing T. at 411, 447, 765, 808).  The ALJ did not address this evidence

in concluding that plaintiff's mental condition had not worsened, and it is, therefore,

unclear as to whether it was considered.  See Agostino v. Kijakazi, No. 22-CV-7235

(PKC), 2024 WL 1259247, at *6 (E.D.N.Y. Mar. 25, 2024) ("The ALJ also erred in

disregarding the fact that the opinions of Drs. Sebold, Ochoa, and Rozelman were stale

by the time she issued her decision in August 2021 . . . In particular, the opinions of Drs.

Sebold and Ochoa did not account for almost a year when the medical records suggest

a possible decline in [the p]laintiff's ability to function, and it was error for the ALJ not to

account for that.").

Because there is more recent evidence in the record that appears to contradict

both Dr. Wolf's and Dr. Long's opinions, showing that plaintiff's physical and mental

functioning may have significantly changed within the relevant period, and the ALJ failed

to fully analyze such evidence, it is recommended that the Court remand the record. See Blash, 813 F. App'x at 644.

Moreover, there appears to be a gap in the record as to plaintiff's physical and mental health limitations and abilities.  See Dkt. No. 17 at 2-3.  "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel[.]" Yucekus v. Comm'r of Soc. Sec., 829 F. App'x 553, 558 (2d Cir. 2020) (summary order) (quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)); see Edward W. v. Kijakazi, No. 1:21-CV-0310 (GTS), 2022 WL 4225235, at *6 (N.D.N.Y. Sept. 13, 2022) ("The ALJ has an 'affirmative obligation to develop the [plaintiff's] complete and accurate medical record,' and failure to comply with this mandate is legal error.") (quoting Camellia O. v. Comm'r of Soc. Sec., 19-CV-1153 (DJS), 2021 WL 354099, at *5 (N.D.N.Y. Feb. 2, 2021), and citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)); see also Brown v. Comm'r of Soc. Sec., No. 20-CV-5959 (KAM), 2023 WL 8828653, at *7 (E.D.N.Y. Dec. 21, 2023) ("In the context of the RFC determination, the ALJ typically has a duty to request medical source opinions where no such opinions or comparable information are otherwise available within the record.") (citation omitted).

Here, the ALJ relied primarily upon stale medical opinion evidence in reaching her RFC determination.  See T. at 20.  Thus, the ALJ erred by failing to solicit up-to-date opinions about plaintiff's physical and mental health, thereby, leaving an obvious gap unfilled.  See Chavez v. Kijakazi, No. 21-CV-4474 (PKC), 2022 WL 17669436, at *5 (E.D.N.Y. Dec. 14, 2022) (explaining the ALJ's duty to develop the administrative record and holding that, where the "[p]laintiff's back pain appear[ed] to have worsened after [a

July 2019] injury," "[b]y not requesting additional records related to the July 2019 injury or an additional medical source opinion[,] the ALJ failed to adequately develop the record, and her decision must be remanded on that basis alone"); see also Adeyemi v. Comm'r of Soc. Sec., No. 20-CV-3386 (MKB), 2022 WL 4134118, at *7 (E.D.N.Y. Sept. 12, 2022) (noting that the "lack of functional assessments from [the p]laintiff's providers after [2016], constitutes an evidentiary gap in the record warranting remand for further development" and concluding that "[t]he ALJ failed to develop the record [by not soliciting up-to-date notes]" when making his decision in 2019).

Further, ALJ Smith did not indicate that she relied upon any additional medical opinion evidence, and she even noted that "the medical consultants and psychological consultants found insufficient evidence."[6]  T. at 22.  "Despite noting the lack of evidence, the ALJ did nothing to further develop the record."  Benitez, 2024 WL 1332612, at *9.  "Failing to adequately develop the record is an independent ground for vacating the ALJ's decision and remanding for further findings."  Nusraty v. Colvin, 213 F. Supp. 3d 425, 442 (E.D.N.Y. 2016) (citing Rosa, 168 F.3d at 83); see Christopher, B. v. Kijakazi, No. 3:22-CV-01559 (MPS/RMS), 2024 WL 2864194, at *16 (D. Conn. Jan. 12, 2024) ("ALJ Molleur's decision was founded on an administrative record with obvious gaps, namely, opinion and/or source evidence relating to medical treatment records comprising nearly the entire period of the plaintiff's alleged disability.  Indeed, while the administrative record contains objective medical evidence from approximately

---

[6] As plaintiff notes, "an ALJ may not, as the ALJ did here, simply reject medical opinions of record and then substitute his or her own medical judgment in their place."  Soropoulos v. Comm'r of Soc. Sec., No. 22-CV-8688 (RWL), 2023 WL 8448211, at *9 (S.D.N.Y. Dec. 6, 2023) (citing Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion")); see Dkt. No. 13 at 9.  "Put another way, ALJs may not, of course 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record."  Russ v. Comm'r of Soc. Sec., 582 F. Supp. 3d 151, 164 (S.D.N.Y. 2022) (internal quotation marks and citation omitted).

two and a half years of treatment/evaluation, the ALJ's decision is supported by medical opinion evidence from only the first few months of that period.  To the extent that opinion evidence fails to sufficiently address the plaintiff's limitations, remand is appropriate.").[7]

In sum, as the ALJ relied upon stale opinion evidence in considering plaintiff's limitations with respect to her physical and mental health, her RFC determination was unsupported by substantial evidence.  See T. at 20.  Consequently, remand of this matter for further administrative proceedings, during which the record can be appropriately developed, is recommended.[8]  See Ruth M. v. Saul, No. 5:18-CV-01006 (FJS/CFH), 2020 WL 819323, at *10 (N.D.N.Y. Feb. 19, 2020), report and recommendation adopted, 2020 WL 1245404 (N.D.N.Y. Mar. 16, 2020).

### C. Plaintiff's Subjective Testimony

Plaintiff further argues that the ALJ improperly rejected her subjective testimony, because (1) the ALJ failed to address plaintiff's reports of ongoing anxiety during the relevant period; (2) the ALJ neglected to explain how certain evidence was inconsistent with plaintiff's testimony; and (3) the ALJ only pointed to objective medical evidence in rejecting plaintiff's testimony.  See Dkt. No. 13 at 12-13.  The Commissioner contends that, "contrary to [p]laintiff's claims[,] the ALJ reasonably concluded that [p]laintiff's subjective complaints of disability were 'not entirely consistent' with the evidence of

---

[7] To the extent the Commissioner argues that "the ALJ did not need either [Dr. Wolf's or Dr. Long's] medical opinion to craft the RFC," such an argument is misguided.  Dkt. No. 16 at 16.  The undersigned notes that "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022) (citation omitted).  Here, because the ALJ relied upon stale evidence, and there are some gaps in the administrative record, the RFC determination is not supported by substantial evidence.

[8] To the extent that the District Judge agrees that the matter be remanded for a new RFC assessment in light of the stale evidence, it is recommended that plaintiff's credibility be reassessed insofar as any additional medical evidence obtained on remand alters the initial credibility assessment.

record as a whole" and "[t]hat the ALJ did not recite every instance in which [p]laintiff reported anxiety is irrelevant."  Dkt. No. 16 at 18.

In assessing an individual's subjective claims of symptoms, an ALJ must first determine whether the "individual has a medically determinable impairment that could reasonably be expected to produce the [alleged] symptom[s,]" and, if so, the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent to which th[ose] symptoms limit [the] individual's ability to perform work-related activities[.]"  SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); see Lori S. C. v. Comm'r of Soc. Sec., No. 3:22-CV-0625 (AMN/DEP), 2023 WL 5776433, at *4 (N.D.N.Y. June 1, 2023) (discussing the two-step review protocol for assessing a claimant's subjective reports of symptoms), report and recommendation adopted, 2023 WL 5089017 (N.D.N.Y. Aug. 9, 2023).

> When addressing this second prong, an ALJ must consider the objective medical evidence and other evidence in the record, including statements by the claimant and reports from both medical and non-medical sources, and must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms, considering relevant factors which include evidence regarding (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the claimant's symptoms, (4) the type, dosage, effectiveness, and side effects of medication, (5) any treatment other than medication that is used to relieve the symptoms, (6) other measures to obtain relief of symptoms, and (7) any other relevant factors.

Amy T. v. Comm'r of Soc. Sec., No. 5:20-CV-0910 (DEP), 2021 WL 6063057, at *5 (N.D.N.Y. Dec. 22, 2021) (citing SSR 16-3p, 2017 WL 5180304, at *3-8).

"An ALJ who rejects [a claimant's] subjective testimony . . . 'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate

reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence.'" Martone v. Apfel, 70 F. Supp. 2d 145, 151 (N.D.N.Y. 1999) (citing Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). "The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above," as long as "it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms." Amy T., 2021 WL 6063057, at *5 (citing Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order) (finding that the ALJ's failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision")). "Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review." Crysler v. Astrue, 563 F. Supp. 2d 418, 440 (N.D.N.Y. 2008) (citing Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)); see Banks v. Comm'r of Soc. Sec., No. 20-CV-3867 (EK), 2023 WL 5718757, at *3 (E.D.N.Y. Sept. 5, 2023) ("The ALJ's assessment of an individual's 'subjective complaints' regarding her pain and other symptoms is entitled to substantial deference by a reviewing court.") (quoting Rivera v. Berryhill, No. 17-CV-991 (JLC), 2018 WL 4328203, at *10 (S.D.N.Y. Sept. 11, 2018)).

Here, as the ALJ noted, plaintiff

> alleged disability due to lower back problems, neck problems, carpal tunnel of the right hand, anemia, a vitamin B12 deficiency, hyperprolactinemia, hypothyroidism, a vitamin D deficiency, heart problems, abdominal pain, seizures, chromogranin A, depression, anxiety and a learning disability. She testified that she has problems with

> lifting and walking.  She testified that she has seizures and
> anxiety.  The claimant testified that she has difficulty being
> around other people, and she has problems managing
> stress.

T. at 20-21 (citations omitted).  The ALJ found that plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms; however,

[plaintiff's] statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in

the record for the reasons explained in this decision."  Id. at 21.  Specifically, the ALJ

found that (1) regarding the back, examinations found "full range of motion," "no

significant bony abnormality," and "normal gait"; (2) regarding the neck, an examination

found "full range of motion" and records describe "no neck pain and no neck stiffness";

(3) regarding the heart, medical records show a "normal heart rate, normal blood

pressure and excellent exercise tolerance," as well as "regular rhythm"; (4) regarding

mental health issues, medical records "describe no depression, no anxiety and no

agitation," as well as "intact memory, intact insight and intact judgment."  Id. at 21-22

(citing T. at 398, 410, 425, 430, 433, 451, 455, 458, 477, 513, 520, 534, 725, 779, 792,

811, 847, 849, 1031, 1666, 1668).

First, plaintiff contends that the ALJ overlooked records of plaintiff's anxiety that

was ongoing during the relevant period.  See Dkt. No. 13 at 12; see also T. at 21.  The

ALJ specifically noted that records from 2019 describe no anxiety, and that records from

2020 describe a normal mood, behavior, and affect.  See T. at 21.  However, as plaintiff

points out, there are records indicating that plaintiff suffered with anxiety during the

relevant period.  See id. at 1040 (having a lot of stress and anxiety on April 16, 2020);

1027 (reporting her anxiety has been high lately on May 12, 2020); 1025 (mood appears

anxious on May 27, 2020); 1016 (anxiety is high on June 3, 2020); 969-73 (reports anxiety and is diagnosed with short-term memory loss on October 2, 2020). "The ALJ fails to articulate how this evidence is inconsistent with [p]laintiff's report of disabling symptoms." Dkt. No. 17 at 6.

As the Commissioner points out, it is well settled that "'[a]n ALJ does not have to state on the record every reason justifying a decision or discuss every piece of evidence submitted.'" Dkt. No. 16 at 18 (quoting Gauda v. Comm'r of Soc. Sec., No. 23-594, 2024 WL 886595, at *2 (2d Cir. Mar. 1, 2024) (summary order), and citing Brault, 683 F.3d at 448) (internal quotation marks omitted). However, "failure to discuss evidence that conflicts with an ALJ's finding prevents meaningful review." Hopkins v. Comm'r of Soc. Sec., 13-CV-1082 (GTS), 2015 WL 4508630, at *5 (N.D.N.Y. July 23, 2015). "Although the ALJ certainly was not required to discuss every piece of evidence in order to show that [s]he considered it, h[er] interpretation of the [mental health record] evidence as being essentially normal" "while not addressing records where abnormalities were noted calls into question whether h[er] discussion of the evidence can be used as support for h[er] finding regarding plaintiff's subjective reports." See Desiree S. v. Comm'r of Soc. Sec., No. 3:22-CV-0985 (MAD/DEP), 2023 WL 7688690, at *6 (N.D.N.Y. Sept. 8, 2023) ("Although the ALJ did engage in some analysis of the medical evidence, that discussion does not provide the necessary insight, and fails to permit meaningful review of how he assessed all the treatment evidence when considering plaintiff's subjective reports."), report and recommendation adopted, 2023 WL 6578958 (N.D.N.Y. Oct. 10, 2023). Thus, the ALJ erred by concluding that medical

records "describe . . . no anxiety" without addressing the records of plaintiff's ongoing

anxiety during the relevant period.  T. at 21-22.

Second, ALJ Smith appears to discredit plaintiff's testimony about her physical

health problems, as well as her problems with lifting and walking.  T. at 20.  However,

plaintiff argues that the ALJ

> neglect[ed] to consider any objective evidence of [p]laintiff's
> bilateral hallux valgus deformities and resulting pain when
> walking, a Holter Monitor Report indicating frequent atrial
> ectopy with a burden of 10%, moderate ventricular ectopy,
> symptomatic PAC's, and significant bradycardia, and that an
> x-ray of the lumbar spine revealed a suspected fracture of
> the left greater trochanter.

Dkt. No. 13 at 13 (citing T. at 427, 454, 516, 519).  The Commissioner is, again, correct

that the ALJ did not have to discuss all of plaintiff's evidence.  See Dkt. No. 16 at 19.

However, as stated above, "[a]lthough it is well-recognized that an ALJ is not required to

discuss every piece of evidence to show that it was considered, the ALJ's explicit

finding that plaintiff's examinations were generally normal makes it unclear whether he

ignored evidence of greater continuing physical symptoms despite treatment."  Jennifer

A. D. v. Comm'r of Soc. Sec., No. 5:20-CV-1254 (DEP), 2022 WL 813881, at *9

(N.D.N.Y. Mar. 17, 2022) (citing Hopkins, 2015 WL 4508630, at *5); see Mark V. v.

Comm'r of Soc. Sec., No. 1:21-CV-10123 (GRJ), 2023 WL 2662678, at *8 (S.D.N.Y.

Mar. 27, 2023) ("Plaintiff's subjective testimony, however, is fully consistent with the

assessment of his treating orthopedic surgeon.  The ALJ's failure to properly analyze

that opinion undermines the decision to discount Plaintiff's credibility."); see also Brown

v. Comm'r of Soc. Sec., No. 20-CV-5959 (KAM), 2023 WL 8828653, at *10 (E.D.N.Y.

Dec. 21, 2023) ("Ultimately, the ALJ did not specify the reason for which he accorded

seemingly no weight to Plaintiff's subjective symptom testimony. . . Ultimately, remand is warranted where, as here, the ALJ fails to detail a basis for his conclusion regarding Plaintiff's credibility.").  Therefore, the ALJ erred on this ground as well.

Last, plaintiff argues that the ALJ erred because she "only point[ed] to objective medical evidence in rejecting [p]laintiff's testimony."  Dkt. No. 13 at 13.  Pursuant to Social Security Ruling ("SSR") 16-3p, an ALJ may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."  2017 WL 5180304, at *5; see 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); see also Julia P. v. Saul, No. 6:19-CV-01171 (LEK), 2021 WL 11549419, at *13 (N.D.N.Y. Feb. 19, 2021) ("Notwithstanding this guidance, the ALJ discounted Parker's subjective accounts of pain and other symptoms in some instances based merely on the absence of objective medical evidence, and in other instances on the basis of spurious assertions of conflicts with the objective medical evidence"; thus, "[o]n remand, to the extent that the ALJ contradicts Parker's subjective account of pain and other symptoms, the ALJ must cite to specific parts of the record— during the relevant time period, where warranted—that undermine Parker's representations.").

Here, especially in light of the stale medical opinion evidence, it appears that the ALJ relied exclusively on objective medical evidence in discounting plaintiff's subjective

statements about her physical and mental symptoms.  See T. at 21-22; see also Donald R. v. Kijakazi, No. 3:22-CV-0161 (DEP), 2023 WL 4364184, at *6 (N.D.N.Y. July 6, 2023) ("The ALJ's reliance specifically on the lack of supportive objective findings without consideration of the broader range of relevant factors is therefore error, and it is not clear from h[er] decision whether [s]he appropriately considered all of the relevant evidence or whether h[er] conclusions are supported by substantial evidence."); cf. Martes v. Comm'r of Soc. Sec., 344 F. Supp. 3d 750, 763 (S.D.N.Y. 2018) (upholding the ALJ's credibility determination where, "in addition to the objective medical evidence, the ALJ considered [the plaintiff's] course of treatment, the opinions provided, and his testimony, in addition to the medical evidence and other evidence in the record.").  This was error.

Accordingly, as the undersigned has found error in the ALJ's consideration of plaintiff's subjective testimony, the undersigned also recommends granting plaintiff's motion and reversing the Commissioner's decision on this ground.  See Virginia D. F. v. Comm'r of Soc. Sec., No. 5:21-CV-720 (GLS/CFH), 2022 WL 4652361, at *22 (N.D.N.Y. Aug. 29, 2022), report and recommendation adopted, 2022 WL 4619873 (N.D.N.Y. Sept. 30, 2022); see also Bogner v. Comm'r of Soc. Sec., No. 20-CV-10724 (NSR/JCM), 2022 WL 16701197, at *19-20 (S.D.N.Y. July 18, 2022), report and recommendation adopted, 2022 WL 4752464 (S.D.N.Y. Sept. 30, 2022).

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

26

**RECOMMENDED**, that the plaintiff's motion (Dkt. No. 13) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's decision be **REVERSED and REMANDED for further proceedings**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Date:    July 24, 2024
         Albany, New York


Christian F. Hummel
U.S. Magistrate Judge